1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6    BARBARA LUCA,                          Case No. 3:14-cv-00615-LRH-WGC

7                              Plaintiff,   REPORT & RECOMMENDATION OF
                                            U.S. MAGISTRATE JUDGE
8           v.

9    CAROLYN W. COLVIN,
     Acting Commissioner of
10   Social Security Administration,

11                             Defendant.

12

13          This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior

14   United States District Judge. The action was referred to the undersigned Magistrate Judge

15   pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Plaintiff has

16   filed a Motion for Remand/Reversal. (ECF No. 12.)[1] The Commissioner filed a Cross-Motion for

17   Summary Judgment (ECF No. 13), and Plaintiff filed a response (ECF No. 14).

18          After a thorough review, the court recommends that Plaintiff's motion be granted; that

19   the Commissioner's motion be denied; and that this matter be remanded for further proceedings

20   consistent with this Report and Recommendation.

21                                  **I. BACKGROUND**

22          On March 10, 2011, Plaintiff filed applications for Social Security Disability Insurance

23   Benefits (DIB) under Title II of the Social Security Act, and for Supplemental Security Income

24   (SSI) under Title XVI of the Social Security Act, with an alleged onset of disability of

25   December 1, 2010. (Administrative Record (AR) 204-216, 235.) Plaintiff's applications were

26   denied initially and on reconsideration. (AR  133-137, 142-151.) Plaintiff requested review by an

27   administrative law judge (ALJ). (AR 152-155.) On February 11, 2013, Plaintiff appeared,

28   _____

     [1] Refers to the court's Electronic Case Filing number.

1  represented by counsel, and testified on her own behalf before ALJ Eileen Burlison. (AR 39-68.)

2  Testimony was also taken from a vocational expert (VE). (*Id*.) On May 2, 2013, the ALJ issued a

3  decision finding Plaintiff not disabled. (AR 18-38.) Plaintiff requested review, and the Appeals

4  Council denied the request, making the ALJ's decision the final decision of the Commissioner.

5  (AR 1-17.)

6      In seeking reversal or remand, Plaintiff argues: (1) the ALJ failed to account for the

7  moderate limitation in maintaining concentration, persistence or pace in assessing Plaintiff's

8  residual functional capacity; (2) the ALJ failed to accord controlling weight to the medical

9  source statement of Plaintiff's treating orthopedist, Dr. Michael Edmunds; and (3) new and

10  material evidence submitted to the Appeals Council from Plaintiff's treating psychiatrist,

11  Dr. Philip Malinas, supports a finding of disability. (ECF No. 12.)

12                          **II. STANDARD OF REVIEW**

13  **A. Substantial Evidence**

14      The court must affirm the ALJ's determination if it is based on proper legal standards and

15  the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*

16  *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is

17  'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

18  reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-

19  24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

20      To determine whether substantial evidence exists, the court must look at the record as a

21  whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*,

22  740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may

23  not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*,

24  759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035

25  (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in

26  medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d

27  1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or

28  reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner."

*Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id.* (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**B. Five-Step Evaluation Process of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §  1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §  404.1520(a)(4)(i), (b); §  416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id.*

- 3 -

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (c). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(b)(1).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and § 416.945(a)(3).

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

1    If the claimant can still do past relevant work, then he or she is not disabled for purposes

2    of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,

3    a claimant who is physically and mentally capable of performing past relevant work is not

4    disabled, whether or not he could actually obtain employment.").

5    If, however, the claimant cannot perform past relevant work, the burden shifts to the

6    Commissioner to establish at step five that the claimant can perform work available in the

7    national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-

8    42, 144. This means "work which exists in significant numbers either in the region where such

9    individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant

10    cannot do the work he or she did in the past, the Commissioner must consider the claimant's

11    RFC, age, education, and past work experience to determine whether the claimant can do other

12    work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

13    testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094,

14    1100 (9th Cir. 1999).

15    "The grids are matrices of the four factors identified by Congress—physical ability, age,

16    education, and work experience—and set forth rules that identify whether jobs requiring specific

17    combinations of these factors exist in significant numbers in the national economy." *Lockwood v.*

18    *Comm'r of Soc. Sec. Admin*., 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and

19    citation omitted). The Grids place jobs into categories by their physical-exertional requirements,

20    and there are three separate tables, one for each category: sedentary work, light work, and

21    medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative

22    notice of the numbers of unskilled jobs that exist throughout the national economy at the various

23    functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's

24    ability to find work, including the claimant's age, education and work experience. *Id*. For each

25    combination of factors, the Grids direct a finding of disabled or not disabled based on the

26    number of jobs in the national economy in that category. *Id*.

27    If at step five the Commissioner establishes that the claimant can do other work which

28    exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely,

1    if the Commissioner determines the claimant unable to adjust to any other work, the claimant

2    will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071;

3    *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

6    At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since

7    the alleged onset date of December 1, 2010. (AR 23.)

8    At step two, the ALJ found Plaintiff has the following severe impairments: degenerative

9    disc disease; status post left ankle fracture and open reduction and internal fixation surgery;

10   bilateral knee pain secondary to osteopenia; mild degenerative changes of the right shoulder; a

11   depressive disorder and an anxiety disorder. (AR 23.)

12   At step three, the ALJ concluded Plaintiff does not have an impairment or combination of

13   impairments that meets or medically equals the severity of one of the Listed Impairments. (AR

14   23.)

15   At step four, the ALJ found Plaintiff has the RFC to perform light work as defined in

16   20 C.F.R. § 404.1567(b) and § 416.967(b), except she is limited to occasional postural activities;

17   can occasionally bend, stoop, kneel, crouch, and crawl; must avoid hazards such as heights or

18   operation of hazardous equipment; and is limited to work which is non-public in nature. (AR 25-

19   31.) The ALJ then found Plaintiff is unable to perform her past relevant work. (AR 31.)

20   At step five, the ALJ considered Plaintiff's age, education, work experience and RFC,

21   and relying on testimony from the VE, concluded that the following jobs exist in significant

22   numbers in the national economy that Plaintiff can perform: housekeeping cleaner (DOT[2]

23   323.687-014); order caller (DOT 209.687-014); and photo copying machine operator (DOT

24   207.685-014). (AR 32.) As such, the ALJ found Plaintiff not disabled from December 1, 2010

25   through the date of the decision. (AR 32.)

26   ///

27   ///

28

---

[2] Refers to the Dictionary of Occupational Titles.

**B. RFC & Moderate Limitation in Maintaining Concentration, Persistence or Pace**

**1. Summary of Argument**

First, Plaintiff argues that the ALJ failed to include in the RFC a moderate limitation in maintaining concentration, persistence or pace. (ECF No. 12 at 17.) Plaintiff further asserts that even though the work identified at step five is unskilled, such work cannot be presumed to include an assessment of the ability to overcome mental limitations such as moderate limitations in maintaining concentration, persistence or pace. (*Id*.) In addition, Plaintiff argues that if the ALJ had expanded on the moderate limitations in maintaining concentration, persistence or pace, it would have materially altered the transferability of skills analysis at step five, and would have allowed Plaintiff to "grid." (*Id*.)

The Commissioner argues that any error in not translating Plaintiff's moderate difficulties with regard to concentration, persistence and pace into a functional limitation was harmless in light of the jobs identified at step five. (ECF No. 13 at 2.) The Commissioner contends that *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-76 (9th Cir. 2008) is controlling, and holds that a finding of a RFC for unskilled work, *i.e.,* simple tasks, is consistent with findings that a claimant had moderate limitations in persistence, pace and concentration. (*Id*.) Since all the jobs identified at step five are unskilled, the Commissioner maintains that a claimant with moderate limitations in persistence, pace and concentration could do them. (*Id*.)

In her reply, Plaintiff argues that *Stubbs-Danielson* is inapposite as it held that an "'assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with the restrictions identified in the medical testimony,'" but the medical testimony there did not establish any limitations in concentration, persistence or pace. (ECF No. 14 at 2, quoting *Stubbs-Danielson*, 539 F.3d at 1174.) In this case, however, Plaintiff points out that the medical evidence clearly established, and the ALJ accepted, moderate difficulties in concentration, persistence or pace. (*Id*.)

**2. Analysis**

At step three of the sequential evaluation process, the ALJ determined that Plaintiff has moderate difficulties with regard to concentration, persistence or pace, based on Plaintiff's own

testimony and the findings of consultative examining psychologist Dr. Jack Araza, that Plaintiff exhibited some difficulty sustaining attention and concentration. (AR 24-25.) The ALJ also mentioned this limitation in connection with her RFC assessment (AR 30), but the ALJ did not actually incorporate the finding of moderate difficulties in concentration, persistence or pace into Plaintiff's RFC. (AR 25-31.) The hypotheticals the ALJ posed to the VE in seeking to determine whether Plaintiff could perform other work at step five also did not include a limitation of moderate difficulties in concentration, persistence or pace. (AR 66-67.)

The "hypothetical an ALJ poses to a vocational expert, which derives from the RFC, must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Comm'r of Soc. Sec. Amin.*, 574 F.3d 685, 690 (9th Cir. 2009) (citation and internal quotation marks omitted) (emphasis original). "Thus, an RFC that fails to take into account a claimant's limitation is defective." *Id.*; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In *Stubbs-Danielson*, the claimant argued that the ALJ failed to take account of many of the functional limitations assessed, including difficulties in maintaining pace. *Stubbs-Danielson*, 539 F.3d at 1173. There, the ALJ found the claimant had the RFC to perform simple, routine, repetitive sedentary work, requiring no interaction with the public. *Id.* The court held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174 (citation omitted). The Ninth Circuit concluded that the ALJ's RFC finding adequately incorporated the limitations identified by two of the doctors, including those related to pace and concentration. *Id.*

In reaching this conclusion, *Stubbs-Danielson* relied heavily on the Eighth Circuit's decision in *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001). In *Howard*, the state psychologist found the claimant had deficiencies in concentration, persistence or pace and said the claimant had the ability "to sustain sufficient concentration and attention to perform at least simple, repetitive, and routine cognitive activity without severe restriction of function." *Stubbs-Danielson*, 539 F.3d at 1174 (citing *Howard*, 255 F.3d at 582). In *Howard*, the ALJ's hypothetical included an ability to perform simple, routine, repetitive tasks, and the court held it

1    adequately captured the claimant's limitations in concentration, persistence or pace. *Id*. The court

2    relied on the psychologist's findings that concluded, despite certain pace deficiencies, that the

3    claimant still had the ability to do simple, repetitive, routine tasks. *Id*.

4         *Stubbs-Danielson* also distinguished the Third Circuit's decision in *Ramirez v. Barnhart*,

5    372 F.3d 546 (3d Cir. 2004). *Stubbs-Danielson*, 539 F.3d at 1174-75. In *Ramirez*, "medical

6    testimony explicitly identified accommodation of a severe anxiety-related pace deficiency as a

7    significant precondition for claimant's success in maintaining a full-time job." *Id*. at 1175. The

8    ALJ's hypothetical did not include the limitation, and the Third Circuit concluded the

9    hypothetical was incomplete. *Id*. The Ninth Circuit pointed out that the medical testimony in

10   *Stubbs-Danielson* did "not endorse a particularized accommodation like the one identified in

11   *Ramirez*." *Id*. Instead, despite some deficiencies in pace identified in *Stubbs-Danielson*, the

12   psychologist still found the claimant able to perform simple tasks. *Id.* Notably, the ALJ in

13   *Stubbs-Danielson* did not adopt a finding of a limitation in pace.

14        In the instant case, Plaintiff distinguishes *Stubbs-Danielson* based on a 2009 unpublished

15   decision of the Ninth Circuit, *Brink v. Comm'r Soc. Sec. Admin*., 343 Fed.Appx. 211 (9th Cir.

16   2009). In *Brink* the court pointed out that the ALJ there had accepted medical evidence that the

17   claimant had moderate difficulty maintaining concentration, persistence or pace, but then the

18   ALJ's hypothetical to the VE referenced only "simple, repetitive" work, without including a

19   limitation as to concentration, persistence or pace. *Id*. The Ninth Circuit found this was in error.

20   *Id*. There, the Commissioner argued, similar to the argument asserted here, that "simple,

21   repetitive work" encompassed difficulties with concentration, persistence or pace, but the Ninth

22   Circuit rejected that argument. *Id*. The court noted that the repetitive, assembly-line work

23   identified by the VE "might well require extensive focus or speed." *Id*. *Brink* distinguished

24   *Stubbs-Danielson* by the very terms that *Stubbs-Danielson* distinguished its facts from those

25   present in the Third Circuit case of *Ramirez*. In *Brink*, the medical evidence established, and the

26   ALJ accepted, that Brink did have difficulties with concentration, persistence or pace. *Id*. In

27   *Stubbs-Danielson*, on the other hand, the medical testimony did not establish such limitations,

28   and therefore *Brink* concluded it was inapposite. *Id*. In *Brink,* the court held that the ALJ erred

1    because the ALJ's hypothetical should have included moderate limitations in concentration,

2    persistence or pace. *Id.*

3         The instant case admittedly presents a "close call." Similar to *Stubbs-Danielson*, the

4    consulting psychologist Dr. Araza noted that Plaintiff had some difficulty sustaining attention

5    and concentration, but in his overall conclusions, did not specifically include a limitation

6    concerning sustaining attention and concentration. (AR 456-460.) Dr. Araza's overall

7    conclusions did, however, include a qualifying statement that Plaintiff's "emotional

8    dysregulation may interfere with her ability to consistently perform at this level of functioning

9    over time" (AR 459.) Importantly, unlike *Stubbs-Danielson*, but similar to *Brink*, the ALJ

10   equated Dr. Araza's findings and Plaintiff's testimony to a limitation of moderate difficulties in

11   maintaining concentration, persistence and pace. (AR 24-25.) Despite adopting this limitation, it

12   was not included in either the ALJ's RFC or the hypotheticals posed to the VE.

13        Therefore, the court equates this case to being more like *Brink*, where the medical

14   evidence established and the ALJ adopted that the claimant had difficulties in concentration,

15   persistence and pace, than like *Stubbs-Danielson*, where there were some findings of deficiencies

16   in pace, but the psychologist nevertheless the claimant still had the ability to do simple,

17   repetitive, routine tasks, and the ALJ adopted the latter into the RFC.

18        To be clear, what stands out to the court in this case is that the ALJ herself found the

19   medical evidence established that Plaintiff had moderate difficulties in concentration, persistence

20   and pace, and adopted that limitation, but then failed to include it in Plaintiff's RFC or the

21   hypotheticals posed to the VE. *See, e.g., Rosas v. Colvin*, Case No. 15-cv-00231-WHO, 2015

22   WL 9455475, at * 13 (N.D. Cal. Dec. 28, 2015) (finding that where "the ALJ relied upon the

23   statements and testimony provided by the claimant and a third party to explicitly find that the

24   claimant has 'moderate difficulties' with concentration, persistence, and pace," it was "error for

25   the ALJ to exclude from the vocational hypothetical mental limitations she found to be supported

26   by the record.").

27        As a result, the court concludes that the ALJ erred. Consequently, the court recommends

28   that this matter should be remanded to the ALJ, for the ALJ to include this limitation in

1   Plaintiff's RFC and in the hypothetical to the VE, and determine whether in light of this

2   additional limitation, Plaintiff is still able to perform work that exists in significant numbers in

3   the national economy. *Id.*

4   **C. Dr. Edmunds' Medical Source Statement**

5        **1. Summary of Argument**

6        Second, Plaintiff argues that the ALJ failed to accord controlling weight to the medical

7   source statement of her treating orthopedist, Dr. Edmunds. (ECF No. 12 at 18-19.) Plaintiff

8   points out that she was not seen for a physical consultative examination, but her case was only

9   reviewed by a State agency medical consultant, and the opinion of a non-examining physician

10   cannot, by itself, constitute substantial evidence justifying rejection of the opinion of a treating

11   physician. (*Id.* at 19.)  Plaintiff maintains that the ALJ improperly rejected Dr. Edmund's

12   opinions concerning her limitations for overhead reaching, and her inability to stand for six to

13   eight hours. (*Id.* at 20.)

14        Plaintiff claims the failure to address the standing limitation was not harmless because if

15   the limitation was adopted, the outcome of the hearing could have been different as Plaintiff

16   would qualify to grid at the sedentary level pursuant to Medical-Vocational Rule 201.14 if she

17   had no transferable skills. (*Id.* at 20-21.)

18        The Commissioner argues that the opinion of Dr. Edmunds was not entitled to controlling

19   weight. (ECF No. 13 at 3-4.) First, the Commissioner contends that Dr. Edmunds' opinion of

20   physical functionality is not entitled to controlling weight because it is contradicted by State

21   agency physicians Sandra Battis, M.D., and Mayenne Karelitz, M.D. (*Id.* at 3.) In addition, the

22   Commissioner claims the ALJ was entitled to reject the opinion regarding an overhead reaching

23   limitation based on the minimal objective findings with respect to Plaintiff's right shoulder

24   impairment, as well as the contrary opinions of Drs. Battis and Karelitz. (*Id.*) In any event, the

25   Commissioner asserts that the ALJ limited Plaintiff to a restricted range of light work and the

26   jobs identified by the VE do not require significant overhead reaching, so any error in rejecting

27   this opinion was harmless. (*Id.*)

28

1    With respect to Dr. Edmunds' opinion that Plaintiff was unable to stand for six to eight

2    hours, the Commissioner argues that Dr. Edmunds specified that limitation was one Plaintiff was

3    "currently" experiencing, and that Dr. Edmunds expected gradual improvement. (*Id.* at 3-4.) In

4    addition, the Commissioner states that Dr. Edmunds opined that Plaintiff's impairment did not

5    prevent her from sitting upright for six to eight hours, and he opined no walking or sitting

6    limitations. (*Id.* at 4.) As a result, the Commissioner contends Plaintiff could still perform the

7    jobs identified at step five, which were all light work, which the Commissioner claims requires

8    standing *or* walking, off and on, for approximately six hours in an eight-hour work day. (*Id.*)

9    **2. Standard**

10    "'In disability benefits cases ... physicians may render medical, clinical opinions, or they

11    may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'"

12    *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d

13    715, 725 (9th Cir. 1998)). "Courts "'distinguish among the opinions of three types of physicians:

14    (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

15    claimant (examining physicians); and (3) those who neither examine nor treat the claimant

16    (nonexamining physicians).'" *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821,

17    830 (9th Cir. 1995)). "'As a general rule, more weight should be given to the opinion of a treating

18    source than to the opinion of doctors who do not treat the claimant.'" *Id.*; *see also* 20 C.F.R. §

19    404.1527(c)(2). "[T]he opinion of a treating physician is thus entitled to greater weight than that

20    of an examining physician, [and] the opinion of an examining physician is entitled to greater

21    weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (citing *Ryan*, 528

22    F.3d at 1198). "If a treating physician's opinion is well-supported by medically acceptable

23    clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

24    evidence in [the] case record, [it will be given] controlling weight." *Ghanim v. Colvin,* 763 F.3d

25    1154, 1160 (9th Cir. 2014) (citation and quotation marks omitted).

26    "To reject an uncontradicted opinion of a treating [or examining] physician, the ALJ must

27    provide 'clear and convincing reasons that are supported by substantial evidence.'" *Ghanim*, 763

28    F.3d at 1160 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)); *Lester v.*

1    *Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted) ("As is the case with the opinion of a

2    treating physician, the Commissioner must provide 'clear and convincing' reasons for rejecting

3    the uncontradicted opinion of an examining physician.").

4          "'If a treating or examining doctor's opinion is contradicted by another doctor's opinion,

5    an ALJ may only reject it by providing specific and legitimate reasons that are supported by

6    substantial evidence.'" *Garrison*, 759 F.3d at 102. "[E]ven when contradicted, a treating or

7    examining physician's opinion is still owed deference and will often be 'entitled to the greatest

8    weight ... even if it does not meet the test for controlling weight.'" *Garrison,* 759 F.3d at 1012

9    (quoting *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007)).

10         "The opinion of a nonexamining physician cannot by itself constitute substantial evidence

11   that justifies the rejection of the opinion of either an examining physician *or* a treating

12   physician." *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996).

13         **3. Analysis**

14         The ALJ stated the following regarding Dr. Edmunds' opinions:

15                 Further, I give some weight to the opinion of Dr. Edmund[s], the claimant's
               treating physician (Exhibit 19F). He opined the claimant was capable of over
16             lifting 50 pounds occasionally and 11-20 pounds frequently, but can rarely reach
               above the right shoulder, and could not stand for 6 to 8 hours currently but that
17             she would have gradual impairment due to her left ankle (Exhibit 19F). I give
               some weight to his opinion, but do not find that the claimant is limited in her
18             overhead reaching as opined by him based on the minimal objective findings of
               her right shoulder impairment.
19

20   (AR 30-31.)

21         First, insofar as the Commissioner contends that Dr. Edmunds' opinion of physical

22   functionality was properly rejected because it was contradicted by the State agency non-

23   examining physicians, the ALJ did not assert this as a basis for rejecting Dr. Edmunds' opinions.

24   The Commissioner's argument ignores Ninth Circuit precedent that the court should "review

25   only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

26   on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v.*

27   *Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)); *see also Brown-Hunter v. Colvin,* 806 F.3d 487,

28

492 (9th Cir. 2015) (citing *Connett*, 340 F.3d at 874); *Burrell*, 775 F.3d at 1138 (citation and quotation marks omitted) ("We are constrained to review the reasons the ALJ asserts.").

In addition, to decline to give the treating physician's opinions controlling weight, the ALJ would have to demonstrate that they were inconsistent with other substantial evidence in the record. The ALJ did not set forth substantial evidence that is inconsistent with Dr. Edmunds' opinions. Moreover, as Plaintiff points out, the non-examining physicians' opinions, by themselves, cannot constitute substantial evidence justifying the rejection of the opinion of a treating physician. *Lester*, 81 F.3d at 831.

Second, the court will address Plaintiff's argument that the ALJ improperly failed to assign controlling weight to Dr. Edmunds' opinion regarding limited overhead reaching. The reason the ALJ set forth for rejecting this opinion is that there are minimal objective findings regarding Plaintiff's right shoulder impairment. If Dr. Edmunds' findings in this regard are contradicted by the non-examining physicians, the ALJ is required to set forth specific reasons supported by substantial evidence in the record for rejecting this opinion. Therefore, the court must determine whether this reason is supported by substantial evidence in the record.

Dr. Edmunds opined that Plaintiff should rarely engage in overhead reaching with the right shoulder. (AR 1081.) The ALJ included no limitation concerning overhead reaching with the right shoulder in Plaintiff's RFC. The medical evidence reflects that an x-ray of the right shoulder on November 29, 2011, showed mild degenerative change of the right AC joint. (AR 480.) On February 16, 2012, Plaintiff complained of, *inter alia*, pain in her right shoulder and elbow and in both hands. (AR 487.) Her examination was positive for bone/joint symptoms. (AR 488.) She complained of right arm pain again on November 26, 2012. (AR 629.) She was evaluated on February 25, 2013 for her right shoulder, as she complained of a three to four month history of gradually worsening right shoulder stiffness. (AR 1085.) It was determined that she had diminished capsular volume, consistent with moderate adhesive capsulitis.[3] (AR 1085, 1087.) She received a right shoulder injection of Lidocaine, Marcaine and Kenalog. (AR 1087.)

---

[3] This is also known as "frozen shoulder" and "is a condition characterized by stiffness and pain in [the] shoulder joint." http://www.mayoclinic.org/diseases-conditions/frozen-shoulder/basics/definition/con-20022510, last visited February 9, 2016.

1    This evidence is not supportive of the ALJ's conclusion that there were minimal

2    objective findings regarding the right shoulder impairment. Instead, an x-ray in 2011 showed

3    mild degenerative change, and Plaintiff continued to complain of pain in the right shoulder

4    through 2013, when it was determined that her condition was consistent with moderate adhesive

5    capsulitis, or frozen shoulder, which required an injection. The diagnosis of a condition

6    characterized by stiffness and pain in the shoulder joint is entirely consistent with Dr. Edmunds'

7    opinion that Plaintiff should rarely engage in overhead reaching with the affected arm. As the

8    ALJ's reasoning is not supported by substantial evidence in the record, the ALJ erred, and

9    controlling weight should have been given to Dr. Edmunds' opinion regarding Plaintiff's ability

10   to engage in overhead reaching with the right shoulder.

11        The Commissioner also argues that even if the ALJ erred in rejecting this opinion, the

12   jobs identified by the VE do not require significant overhead reaching. (ECF No. 13 at 3.)

13   The first job identified by the VE and the ALJ, housekeeping cleaner (DOT 323.687-014),

14   indicates that there is frequent reaching, meaning that it would be required from one-third to two-

15   thirds of the time.

16        The VE and ALJ then identified the job of order caller, with an identifier of DOT

17   209.687-014. (AR 32, 67.) The job of order caller, however, is set forth at DOT 209.667-014. It

18   requires frequent reaching. The job that correlates with DOT 209.687-014 is a mail handler, and

19   it also requires frequent reaching.

20        The third job identified by the VE and ALJ is photocopying machine operator, DOT

21   207.685-014. (AR 32, 67.) This job also requires frequent reaching.

22        The DOT does not distinguish between overhead reaching and other types of reaching.

23   The court perceives an apparent conflict between a limitation on overhead reaching and a DOT

24   description of a job involving frequent reaching, which would need to be explored by the ALJ

25   and VE, *i.e.*, to determine whether the jobs identified would be consistent with a limitation to

26   rare overhead reaching with the right arm. *See e.g., McCabe v. Colvin,* No. 3:14-cv-00396-LRH-

27   WGC, 2015 WL 4740509, at *9-11 (D. Nev. Aug. 10, 2015), adopting the undersigned's report

28   and recommendation; *Samsaguan v. Colvin*, No. EDCV 12-2219-DFM, 2014 WL 218419 (C.D.

1   Cal. Jan. 21, 2014); *Richardson v. Astrue,* No. 11-CV-1332-LHK, 2012 WL 5904733, at * 6

2   (N.D. Cal. Nov. 26, 2012); *Jordan v. Astrue,* No. 09-CV-1559 MMA (WMc), 2010 WL 2816234

3   (S.D. Cal. May 4, 2010). Therefore, the court does not agree with the Commissioner that the

4   ALJ's error in failing to adopt this limitation is harmless. Remand is appropriate to allow the

5   ALJ to resolve the apparent conflict between this limitation and the jobs identified by the VE at

6   step five.

7         Third, the court will address Dr. Edmunds' opinion that Plaintiff was unable to stand for

8   six to eight hours.

9         The Commissioner argues that while Dr. Edmunds opined that Plaintiff was unable to

10  stand for six to eight hours, he specified that was only "currently" and that he expected gradual

11  improvement. (ECF No. 13 at 3-4.)  The problem is that while the ALJ recited Dr. Edmunds'

12  opinion, she did not assign any weight or otherwise address that opinion. "Where an ALJ does

13  not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one

14  medical opinion over another, he errs." *Garrison,* 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100

15  F.3d 1462, 1464 (9th Cir. 1996)). In other words, if the ALJ thought that the record did not

16  support a limitation on standing, she was required to say so, and to state her reasons for rejecting

17  this opinion. Reciting Dr. Edmunds' opinion, but failing to discuss it, particularly when other

18  limitations imposed by Dr. Edmunds were specifically discussed, is insufficient.

19        Moreover, an ALJ must assess a claimant's "work-related abilities on a function-by-

20  function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and

21  416.945. Only after that may RFC be expressed in terms of the exertional levels of work,

22  sedentary, light, medium, heavy, and very heavy." SSR 96-8P, 1996 WL 374184 (July 2, 1996).

23  "[I]n order for an individual to do a full range of work at a given exertional level, such as

24  sedentary, the individual must be able to perform substantially all of the exertional and

25  nonexertional functions required in work at that level." *Id.* "Therefore, it is necessary to assess

26  the individual's capacity to perform each of these functions in order to decide which exertional

27  level is appropriate and whether the individual is capable of doing the full range of work

28  contemplated by the exertional level." *Id.* SSR 96-8P cautions that at step four, "a failure to first

- 16 -

1    make a function-by-function assessment of the individual's limitations or restrictions could result

2    in the adjudicator overlooking some of an individual's limitations or restrictions."  *Id*. Similarly,

3    it states with respect to step five:

4          Without careful consideration of an individual's functional capacities to support
      an RFC assessment based on an exertional category, the adjudicator may either

5          overlook limitations or restrictions that would narrow the ranges and types of
      work an individual may be able to do, or find that the individual has limitations or

6          restrictions that he or she does not actually have.

7    *Id*. SSR 96-8P makes clear that an ALJ is required to address the claimant's exertional and non-

8    exertional abilities in determining the RFC. The exertional abilities specifically include the

9    claimant's ability to sit, stand and walk, and the ALJ must consider each function separately,

10   "even if the final RFC assessment will combine activities." *Id*. Finally, SSR 96-8P provides:

11   "The RFC assessment must always consider and address medical source opinions. If the RFC

12   assessment conflicts with an opinion from a medical source, the adjudicator must explain why

13   the opinion was not adopted." *Id*.

14         Because the ALJ did not specifically discuss Plaintiff's ability to stand in the RFC

15   assessment, and failed to assign any weight to Dr. Edmunds' opinion limiting Plaintiff's ability

16   to stand, and explain why she rejected that opinion, the ALJ erred.

17         The court disagrees with the Commissioner's argument that the ALJ's failure to address

18   Dr. Edmunds' standing limitation is a harmless error because Plaintiff was determined to be able

19   to perform light work with some limitations, and light work involves the ability to stand *or* walk

20   *or* sit. "ALJ errors in social security cases are harmless if they are 'inconsequential to the

21   ultimate nondisability determination' and ... 'a reviewing court cannot consider [an] error

22   harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the

23   testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d

24   1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56

25   (9th Cir. 2006)).

26         Light work is defined as, *inter alia,* "requir[ing] *a good deal of walking or standing*, or ...

27   sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §

28   416.967(b) (emphasis added). "To be considered capable of performing a full range of light

- 17 -

1    work, [the claimant] must have the ability to do *substantially all of these activities*." *Id.*

2    (emphasis added). Social Security Ruling 83-10 expands on this by providing, "the full range of

3    light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-

4    hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983

5    WL 31251 (1983). Since a claimant must be able to perform the standing *and* walking *and* sitting

6    requirements of the job for six out of eight hours in a workday, the fact that Plaintiff is able to

7    meet only the walking or sitting requirements is insufficient for an RFC of light work. Therefore,

8    this matter should be remanded so that the ALJ may consider Dr. Edmunds' opinion regarding

9    Plaintiff's ability to stand and address the limitation in the RFC analysis.

10   **D. Evidence Submitted to the Appeals Council**

11       **1. Summary of Argument**

12       Finally, Plaintiff argues that new and material evidence was submitted to the Appeals

13   Council that supports a finding of disability. (ECF No. 12 at 21-22, citing AR 1092-1094.) She

14   indicates that after the unfavorable decision, her treating psychiatrist, Dr. Malinas, completed a

15   mental RFC questionnaire (dated May 31, 2013), stating that Plaintiff was unable to meet

16   competitive standards in the following areas: remember work-like procedures; maintain attention

17   for two-hour segments; complete a normal workday/week without interruptions from

18   psychologically based symptoms; deal with normal work stress; understand, remember and carry

19   out detailed instructions; set realistic goals or make plans independently of others; deal with

20   stress of semiskilled and skilled work; interact appropriately with the general public; travel in

21   unfamiliar places; and use public transportation. (ECF No. 12 at 22.) Dr. Malinas also opined

22   Plaintiff would likely be absent from work more than four days per month. (*Id.*) Finally,

23   Dr. Malinas also stated that Plaintiff's condition was at this severity as of April 2011. (*Id.*)

24       Plaintiff points out that the VE testified that an individual that would be absent from

25   work three or more days per month would not be able to maintain competitive employment. (*Id.*)

26   Plaintiff asks the court to remand her case to determine the effect this opinion has on Plaintiff's

27   disability status. (*Id.*)

28

1    The Commissioner argues that because Dr. Malinas completed this questionnaire after the

2    ALJ's unfavorable decision, it has no bearing on the period under the ALJ's consideration

3    (December 1, 2010 (onset date) to May 2, 2013 (decision date)). (ECF No. 13 at 4.) While

4    Dr. Malinas states that the limitations applied since April 2011, the Commissioner maintains that

5    "'after-the-fact psychiatric diagnoses are notoriously unreliable.'" (*Id.*, quoting *Vincent o.b.o.*

6    *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). In addition, the Commissioner points

7    out that Dr. Malinas' opinions are in stark contrast with those of the consultative psychological

8    examiners. (*Id.*) As a result, the Commissioner contends that the Appeals Council appropriately

9    disregarded Dr. Malinas' opinions. (*Id.*)

10   **2. Analysis**

11   The Appeals Council shall consider new and material evidence "only where it relates to

12   the period on or before the date of the administrative law judge hearing decision." 40 C.F.R.

13   § 404.970(b); § 416.1470. If this is the case, the Appeals Council is required to "evaluate the

14   entire record including the new and material evidence" in making its determination. *Id.*

15   Dr. Malinas' mental RFC questionnaire, while completed after the ALJ's decision, does

16   indicate that the findings apply to Plaintiff's condition as of April 2011. Therefore, it appears

17   that the evidence relates to the period before the ALJ's decision, and the ALJ  should consider

18   Dr. Malinas' opinions on remand. The ALJ may then assign whatever weight is deemed

19   appropriate to the opinions, so long as the reasons set forth are legally sufficient and the

20   determination is supported by substantial evidence in the record.

21   **IV. RECOMMENDATION**

22   **IT IS HEREBY RECOMMENDED** that Plaintiff's motion (ECF No. 12) be

23   **GRANTED**; that the Commissioner's cross-motion (ECF No. 13) be **DENIED**; and that the

24   matter be **REMANDED** to the ALJ for further proceedings consistent with this Report and

25   Recommendation.

26   ///

27   ///

28   ///

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: February 10, 2016.

_William G. Cobb_

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE